

**FILED**
June 22, 2026 04:00 PM
SX-2015-CV-00097
**TAMARA CHARLES**
**CLERK OF THE COURT**

# IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | |
|---|---|
| IN RE: BAUXITE CONTAINING SILICA HALLIDAY LITIGATION SERIES | **MASTER CASE NO: SX 15-CV-097 (Re: Nos. 2011-234, 239, 241, 249)** |

**Cite as: 2026 VI Super 28P (Published)**

**Appearances:**

**J. Russell Pate, Esq.**
The Pate Law Firm
PO Box 890
St. Thomas, VI 00804
*For Plaintiffs*

**Warren T. Burns, Esq., Korey A. Nelson, Esq., Daniel H. Charest, Esq., Rick Yelton, Esq., and Chase Charbonnet, Esq.**
Burns Charest, LLP
900 Jackson Street, Ste. 500
Dallas, TX 75202
*For Plaintiffs*

**Thomas Alkon, Esq.**
Thomas Alkon, P.C.
*P.O. Box 223032*
Christiansted, VI 00822
*For Plaintiffs*

**Kevin A. Rames, Esq.**
K.A. Rames, P.C.
211 Company Street, Ste. 3 Christiansted,
St. Croix VI 00820
*For Defendant Lockheed Martin Corporation*

**Gregory K. Wu, Esq., KaSandra N. Rogiers, Esq.**
Shook, Hardy, & Bacon LLP
2555 Grand Blvd.
Kansas City, MO 64108
*For Defendant Lockheed Martin Corporation*

**Debra K. Lefler, Esq.**
Katten Muchin Rosenman, LLP
50 Rockefeller Plaza
New York, NY 10020-1605
*For Defendant Glencore Limited*

**Jacques Semmelman, Esq.**
Curtis, Mallet-Prevost, Colt & Mosle LLP
101 Park Avenue, 35th Floor
New York, NY 10178-0061
*For Defendant Glencore Limited*

**Douglas Capdeville, Esq.**
Capdeville Law
2107 Company St.
St. Croix, V.I. 00822
*For Defendant Glencore Limited*

## MEMORANDUM OPINION
### (Filed June 22, 2026)

**Andrews, Jr.,** *Judge*

## INTRODUCTION

Plaintiffs Rodney Felix, Miguel Velez, Gabriel Ramos, and Ronald Boston, former workers at Martin Marietta Alumina Refinery (the Refinery) in St. Croix, bring this action for damages against Lockheed Martin Corporation (LMC), a Marlyand corporation and successor-in-interest to several Martin Marietta entities, who owned and operated the Refinery. They also bring suit against Glencore, Ltd., a New Jersey corporation who supplied bauxite ore to the Refinery. Plaintiffs allege that during their employment, LMC negligently exposed refinery workers to bauxite ore which caused them to suffer from mixed dust pneumoconiosis. They

contend Glencore failed to provide adequate warnings as to the dangerousness of bauxite ore. LMC and Glencore (Defendants) move this Court to grant summary judgment against Plaintiffs because, among other reasons, they filed their complaints more than two years after they became aware of their injuries and their cause.[1] Plaintiffs respond that their complaints were timely filed within two years after learning of their injuries. For the reasons mentioned below, this Court concludes Plaintiffs timely filed their complaints and will thus deny Defendants' Joint Motion for Summary Judgment.

## FACTUAL BACKGROUND[2]

From 1972 to 1985, predecessors of LMC, i.e., Martin Marietta Aluminum, Inc., Martin Marieta Alumina, Inc., and Martin Marietta Aluminum Properties, collectively known as Martin Marietta, owned and/or operated an alumina refinery (the Refinery) located on the south shore of St. Croix.[3] Pls.' Resp. to Defs.' S.U.F. 1:1, 2:6. The Refinery closed in 1985. Id. at 1:2. Virgin Islands Aluminum Company (VIALCO) purchased the Refinery in 1989, resumed operations in 1990,

---

[1] Although Defendants set forth several bases for summary judgment in their motion. This opinion addresses only their argument concerning the statute of limitations. Their other bases will be addressed under a separate order.

[2] The facts pertaining to the issues raised in Defendants' motion are undisputed.

[3] Plaintiffs dispute this fact and assert that each of LMC's predecessors had a different role within the Refinery. Pls.' Resp. to LMC's S.U.F. ¶ 2. However, they submitted no document in support of their bare denial and do not specifically dispute Defendants' assertion. Thus, the Court treats the asserted fact as undisputed. V.I. R. Civ. P. 56(e)(2).

and closed in 1995. Id. at 2:3-5.    Glencore supplied VIALCO with bauxite. Id. at 3:20.

Plaintiff Ronald Boston, died on May 12, 2020 at approximately 75 years of age. Id. at 4:22-23.    He worked at the Refinery from 1990 to 1995 for VIALCO. Id. at 4:24.    Plaintiff Rodney Felix is 82 years old. Id. at 5:28.    He worked at the Refinery from 1973 to 1985 when it was owned by Martin Marietta, from 1991 to 1995 when it was owned by VIALCO, and from 1996 to 2000 when it was owned by Alcoa. Id. at 5:29-30, 32.    Plaintiff Gabriel Ramos is 79 years old. Id. at 5:34. He worked at the Refinery from 1972 to 1985 under Martin Marietta's ownership, 1991 to 1995 under VIALCO's ownership and up to 1997 when it was owned by Alcoa. Id. at 6:35-37.    Plaintiff Miguel Velez is 63 years of age. Id. at 6:41.    He worked at the Refinery in 1986 for Martin Marietta, from 1990 to 1995 for VIALCO, and from 1995 to 1999 for Alcoa. Id. at 7:42.

In January 2008, Plaintiffs' counsel arranged for them to receive chest X-rays. Id. at 16:90-94.    On April 1, 2008, radiologist Dr. Donald Breyer issued reports concerning his B-read of Plaintiffs' X-rays. Defs.' Mot. for Summ. J Exs. 44-46, 48.    He concluded that each of them had parenchymal abnormalities consistent with pneumoconiosis. Id.    He also concluded that each had lung opacities and bilateral interstitial fibrosis consistent with asbestosis. Id.

Around May 8, 2008, Plaintiffs' counsel sent them letters describing their X-ray results. Pls.' Resp. to Defs.' Suppl. SUF 1.    In January 2009, Dr. Bentancourt

examined Plaintiffs. Id. at 20:120-123. On June 2, and June 8, 2009, Dr. Bentancourt issued reports concluding that each plaintiff had mixed dust pneumoconiosis (MDP). Defs.' Mot. for Summ. J Exs. 57-60. MDP is an interstitial lung disease that is part of a group of such diseases within a category called "pneumoconioses" . Pls.' Resp. to Defs.' S.U.F. 8:54. It is not as common as other pneumoconioses like asbestosis, silicosis, and coal worker's pneumoconiosis. Id. at 8:55.

In their initial complaints (as well as in their second and third amended complaints) Plaintiffs claimed to have pneumoconiosis as a result of exposure to bauxite dust containing silica, and asbestos dust and fibers. See e.g. Compl. 3:3, 3:5 (2011-234 - Felix). In their Fourth Amended Complaints they claim they were exposed to bauxite ore dust, its constituent components, and its waste products during the course of their employment. See e.g. Fourth Amend. Compl. 7:35, 7:39 (2011-234 - Felix). They were also diagnosed with MDP. Id.

## PROCEDURAL HISTORY

Plaintiffs filed their complaints on May 9, 2011 against LMC, Aleris Rolled Products, Inc. and General Engineering Corporation. Compls. (2011-234; 2011-239, 2011-241, 2011-249), 05/09/11. They amended their complaints on May 31, 2011 and added Glencore as a defendant. First Am. Compl., 05/31/11. After two further amendments, Plaintiffs filed Fourth Amended Complaints against LMC and Glencore only on August 8, 2022. Fourth Am. Compls. (2011-234; 2011-239, 2011-

241, 2011-249), 08/08/22.   All counts allege negligence on the part of LMC and Glencore.

Defendants filed their "Joint Motion for Summary Judgment" on September 10, 2021 and a "Supplemental Brief in Support of Motion for Summary Judgment" on October 6, 2021.   These filings relate solely to bellwether Plaintiffs, Rodney Felix (20011-234), Miguel Velez (2011-239), Gabriel Ramos (2011-241), and Ronald Boston (2011-249).[4]   Plaintiffs opposed Defendants' motions on October 21, 2021, and Defendants replied on November 1, 2021.   On February 11, 2022, all parties filed briefs, pursuant to this Court's January 25, 2022 order regarding a Banks analysis of the statute of limitations commencement for creeping diseases. On February 15, 2023, Defendants filed a Notice of Relevant Opinion.   On February 2, 2024, all parties filed briefs, pursuant to this Court's January 17, 2024 oral order, regarding the impact of this Court's decision in Burt v. Lockheed Martin Corp., 79 V.I. 3 (V.I. Super Ct. 2022), on the statute of limitations issue.   No hearing on the motions was held.

## APPLICABLE LAW

¶1    Under Virgin Islands law, summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.I. R. Civ. P. 56(a); Machado v. Yacht

---

[4] Defendants state in the motion that "this motion is directed solely to the claims filed by the Bellwether Plaintiffs." Defs.' Mot. for Summ. J. 1.

Haven U.S.V.I., LLC, 61 V.I. 373, 380 (V.I. 2014) (stating summary judgment is not to be granted unless "the pleadings, discovery, and disclosures of materials on file, and any affidavits show that there is no genuine issue of material fact.). The movant bears the burden of demonstrating the absence of any genuine issue of material fact based upon the record. Aubain v. Kazi Foods of V.I., LLC, 70 V.I. 943, 948 (V.I. 2019) (quoting Brodhurst v. Frazier, 57 V.I. 365, 373-74 (V.I. 2012)). The moving party may meet his burden by "pointing out that there is an absence of evidence to support the nonmoving party's case." Id. If this is done, the burden shifts to the non-moving party to demonstrate with affirmative evidence from which a jury might reasonably rule in his favor. Id. Pursuant to the Virgin Islands Supreme Court, "'affirmative evidence' means 'actual evidence' and 'not mere allegations'." Basic Svcs., Inc. v. Govt. of the V.I., 71 V.I. 652, 659 (V.I. 2019). In considering a summary judgment motion, "this Court must view all evidence in the light most favorable to the non-moving party." Id. Here, Plaintiffs are the non-moving parties.

## LEGAL ANALYSIS

Defendants seek dismissal of Plaintiffs' complaints on grounds that they were filed outside the applicable two-year statute of limitations. They claim "Plaintiffs filed their lawsuits more than three years after they knew, or through the exercise of reasonable diligence, should have known that they had been injured, and that the injury had been caused by another party's conduct." Defs.' Mot. for

Summ. J. 17. This knowledge, they claim, was received on April 1, 2008 when Dr. Breyer issued reports to Plaintiffs' counsel. Id. To the contrary, Plaintiffs assert that the statute of limitations was tolled until June 8, 2009 when they received reports from Dr. Bentancourt that they had MDP. Pls.' Opp'n. to Defs.' Mot. for Summ. J. 25-28. They further contend their complaints were timely filed within two years thereof, in May 2011. The Court concurs with Plaintiffs' contention.

### 1) The Discovery Rule Applies to Toll the Applicable Statute of Limitations on Plaintiffs' Tort Claims.

¶2 Plaintiffs allege various personal injury tort claims against Defendants in their complaints. Compls. No. 2011-234, 239, 242, 249. Pursuant to Virgin Islands law, the time period within which to commence an action for non-contractual injuries to person is two years after the cause of action has accrued. 5 V.I.C. § 31(5)(A). Generally, a cause of action accrues upon occurrence of the essential facts that give rise to the cause of action. In re Tutu Wells Contamination Litig., 846 F. Supp. 1243, 1255 (D.V.I. 1993). Here, Plaintiffs' causes of action would generally have accrued no later than 1995 or 2000 when their employment at the Refinery terminated. However, where the injury or its cause was not immediately known despite the exercise of due diligence, the discovery rule applies to toll the applicable statute of limitations. Burt, 2024 V.I. 33 at *P15 (stating, "we take this opportunity to confirm that the discovery rule as outlined and

applied by <u>Santiago</u> and adopted from <u>Joseph</u> applies to the Virgin Islands statute of limitations."); <u>Santiago v. V.I. Housing Auth.</u>, 57 V.I. 256, 273 (V.I. 2012) (citing <u>Joseph v. Hess Oil</u>, 867 F.2d 179, 182 (3d Cir. 1989)) (stating, in an asbestos case, "the discovery rule tolls the statute of limitations when, despite the exercise of due diligence, the injury or its cause is not immediately evident to the victim."). Tolling continues until "the plaintiff knows or reasonably should know: (1) that he or she has been injured; <u>and</u> (2) that the injury has been caused by another party's conduct." <u>Joseph</u>, 867 F.2d at 182 n. 8; <u>Burt</u>, 2024 V.I. at *P15 (stating, "we hold that the conjunctive view of the discovery rule principles as articulated in <u>Joseph</u> and <u>Santiago</u>, requiring that the plaintiff have knowledge of <u>both</u> the injury <u>and</u> its cause, is the proper construction applicable to the Virgin Islands statute of limitations."). The focus under the discovery rule is not on the plaintiff's actual knowledge but on "whether the knowledge was known, or through the exercise of diligence, knowable to [the] plaintiff." <u>Santiago</u>, 57 V.I. at 273 (quoting <u>Bohus v. Belof</u>, 950 F.2d 919, 925 (3d Cir. 1991)). Precision and certainty of the injury and cause is not required. Instead, "the statute of limitations begins to run on the first date that the injured party possesses sufficient critical facts to put [her] on notice that a wrong has been committed and that [she] need[s] [to] investigate to determine whether [she] is entitled to redress." <u>Marsh-Monsanto v. Clarenbach</u>, 66 V.I. 366, 375 (V.I. 2017) (quoting <u>Santiago</u>, 57 V.I. at 274).

Here, Plaintiffs claim to suffer from a creeping disease, i.e., MDP, that was

not immediately evident during their employment at the Refinery.  Under the circumstances, this Court concludes that the discovery rule applies to toll the two-year statute of limitations on Plaintiffs' claims.  The parties do not dispute this conclusion.  They differ on the application of the rule, specifically, the date on which tolling ended under the rule.   Hence, the narrow issue is whether there is a genuine issue of material fact as to the date Plaintiffs knew or should have known they had an injury and that it was caused by the conduct of another.   If such a dispute exists, the Motion for Summary Judgment must be denied.  If not, this Court can determine the timeliness of Plaintiffs' complaints as a matter of law.[5]

### 2) The Discovery Rule Tolled the Statute of Limitations On Plaintiffs' Mixed Dust Pneumoconiosis Claims Until They Received Dr. Bentancourt's June 2009 Reports.

¶3     As explained above, the discovery rule operates to toll the statute of limitations until Plaintiffs knew, or should have known they had an injury, and knew, or should have known, it was caused by another person's conduct.    To prevail, Defendants must show that Plaintiffs knew, or should have known, of their injuries and the cause before May 09, 2009 (for LMC) or before May 31, 2009 (for Glencore), that is, two years before the filing of their complaints.   A proper analysis

---

[5]   Since the critical focus in applying the discovery rule is when a party knew or should have known of their injury, it is typically a question of fact. United Corp. v. Hamed, 64 V.I. 297, 306 (V.I. 2016).   However, where there is no genuine issue of material fact, this Court may proceed to determine whether Plaintiff's action is time barred as a matter of law. See Marsh-Monsanto, 66 V.I. at 375 (stating "when the underlying facts are undisputed, application of the statute of limitations presents a question of law that may be resolved by summary judgment.").

of the issue before the Court requires a key determination of what "injuries" are in dispute. The parties differ on this sub-issue.

Plaintiffs make three critical allegations in their complaint: 1) in the course of their employment, they were exposed to bauxite dust, its constituent components, and its waste products; 2) they were diagnosed with MDP on June 2nd and 8th, 2009; and 3) they were harmed as a result of exposure to bauxite ore, its hazardous constituents, and its waste products. Nowhere in their complaint do they allege to suffer from asbestosis or any other form of pneumoconiosis. Accordingly, the relevant "injury" subject to analysis is MDP; and thus, the specific inquiry is when did Plaintiffs know, or should have known, that they had MDP and its cause.

The record is clear that Plaintiffs' first notice that they had an MDP injury was upon receipt of Dr. Bentancourt's report in June 2009. The June 2nd and 8th, 2009 reports stated that each plaintiff had MDP and three of them resulted from exposure to bauxite, alumina dust, coal dust, and asbestos fibers. Defs.' Mot. for Summ. J Exs. 57-60. They put Plaintiffs on notice that they had an injury (i.e., MDP) and the cause thereof. That notice ended tolling of the Statute of Limitations and Plaintiffs had until June 2011 to investigate whether they were entitled to redress. They later timely filed their complaints in May 2011. The analysis here is that simple.

Defendants make numerous arguments which complicate the issue by

conflating pneumoconiosis with asbestosis and MDP.   They fail to recognize any

distinction between these terms as is evident in their arguments below:

1) Plaintiffs filed their lawsuits more than three years after they knew [on April 2, 2008], or through the exercise of reasonable diligence should have known, that they had been injured, and the injury had been caused by another party's conduct. Id. at 17.

2) Plaintiffs and their counsel received notice that they might have pneumoconiosis no later than April 1, 2008. Id. (emphasis supplied).

3) The issue is . . . when they [Plaintiffs] had sufficient information that they could have pneumoconiosis to trigger a duty to investigate, starting the two-year statutory clock. Id. at 18 (emphasis supplied)

4) [W]hat is controlling is that by April 2008, Plaintiffs were on notice that they had or could have pneumoconiosis. Id. at 19 (emphasis supplied).

5) Upon learning in April 2008 that Dr. Breyer, a physician and B-reader, had issued a report finding they had lung opacities 'consistent with pneumoconiosis,' Plaintiffs were on notice that they had a possible injury. Id. at 21 (emphasis supplied).

6) Moreover, by January 2009, Mr. Alkon discussed with Dr. Bentancourt that bauxite was the possible cause of Plaintiffs' injuries. Id. at 26.

7) Dr. Breyer's report were certainly sufficient to give Mr. Alkon notice that Plaintiffs likely suffered from pneumoconiosis. Id. at 31.

8) Attorney Alkon's knowledge of the basis relating to the potential cause of Plaintiffs' alleged injuries, including the fact that Attorney Alkon had previously filed lawsuits on behalf of other plaintiffs in 2007 and early 2008 alleging that exposure to bauxite and other dusts caused them to develop pneumoconiosis. Plaintiffs thus should have known of their alleged injuries and the potential cause no later than May 30, 2008. Defs.' Suppl. Mot for Summ. J. 4.

9) On May 30, 2008, Plaintiffs' lawyer told them Dr. Breyer believed they had a pleural disease, and additional testing will be required to clarify his findings.   This notice started the statute of limitations clock. Defs.' Suppl. Br. in Support of Mot. for Summ. J. 5.

10) Plaintiffs are barred by the statute of limitations because they knew or reasonably should have known of their alleged injuries and the cause thereof no later than May 30, 2008, after receiving Dr. Breyer's reports and Attorney Alkon's letter advising them of their Injury and potential harm. Defs.' Suppl. Mot. for Summ. J. 7.

11) Plaintiffs did not claim to have MDP in their original complaint. They only claimed MDP in their amended complaint. "Plaintiffs' assertion that the statute of limitations was tolled until they learned they had "MDP" rather than pneumoconiosis is thus refuted by the simple fact that they only filed suit for 'pneumoconiosis,' not for 'MDP.' Defs.' Reply 4, 11/01/21.

12) Dr. Breyer's report gave Plaintiffs sufficient information to begin investigating their claims since they were aware that bauxite is a potential cause for their alleged injury. Joint Reply 2, 10/28/22.

The issue Defendants address is when Plaintiffs knew, or should have known, they had pneumoconiosis.   They combine pneumoconiosis, asbestosis, and MDP as one disease.   This confuses the analysis as Virgin Islands law distinguishes between the terms.

Pneumoconiosis is a general term for a group of lung diseases caused by the inhalation of dusts. pulmonologyadvisor.com/ddi/pneumoconiosis/ (Last visited on 06/22/2026); cdc.gov/niosh/pneumoconioses/about/ (Last visited on 06/22/2026);https://www.urmc.rochester.edu/encyclopedia/content?ContentTypeI D=134&ContentID=162 (Last visited on 06/22/2026).   It includes asbestosis, silicosis, and MDP.   The parties concede as much.   They agree that

> MDP is an interstitial lung disease that is part of a group of such diseases within a category called 'pneumoconioses'. . . It is not as common as other pneumoconioses like asbestosis, silicosis, and coal worker's pneumoconiosis.

Pls.' Resp. to Defs.' S.U.F. 8:54-55. The commonly understood meaning of asbestosis is a disease caused by the inhalation of asbestos dust. In re Alumina Refinery Toxic Dust Claims, 78 V.I. 186, 202 (V.I. Super. 2023) (citing www.oxfordlearersdictionaries.com) (Last visited 6/22/2026); https://www.mayoclinic.org/diseases-conditions/asbestosis/symptoms-causes/syc-20354637 (Last visited on 06/22/2026); https://my.clevalandclinc.org>health>22245-asbestosis (Last visited on 06/22/2026). Consistent with these definitions, this Court first determined in In re Alumina Refinery Toxic Dust Claims that asbestosis and MDP "are separate diseases and hence should be afforded separate statute of limitations analyses." 78 V.I. 186, 202-204 (V.I. Super Ct. 2023). That determination is consistent with the subsequent Virgin Islands Supreme Court's ruling in Burt. There, this Court dismissed the plaintiff's asbestos and bauxite-related claims after determining that tolling (under the statute of limitations) ended upon notice of his asbestos-related injury. The Supreme Court upheld dismissal of the asbestos-related claims. However, it reversed dismissal of the bauxite-related claims and noted:

> While Burt did not explicitly argue separately for a different analysis of the statute of limitation claims involving the bauxite and alumina-related injuries before the Superior Court, he did argue that he had no knowledge of those bauxite dust injuries until he met with his attorney

> on July 21, 2019, and that summary judgment should be denied as to all claims. The bauxite and alumina claims dusts claims were therefore sufficiently presented to the Superior Court and are not waived on appeal.

2024 V.I. 33 at *P41. The Supreme Court then concluded that

> At a very minimum, there is a question of material fact as to when Burt had knowledge of his <u>separate</u> bauxite and alumina dust related injuries, i.e., <u>mixed dust pneumoconiosis</u>, much less the cause of that injury before July 21, 2019, which would preclude the granting of summary judgment as to those claims of the complaint. Thus, in dismissing the entire complaint with prejudice <u>without any consideration or findings on the bauxite and alumina dust claims</u>, the Superior Court erred.

<u>Id</u>. at *P43 (emphasis supplied). The Supreme Court in <u>Burt</u> thus made two critical findings: 1) the plaintiff's asbestos-related injury was separate from his bauxite-related (i.e., MDP) injury; and 2) the plaintiff was entitled to separate consideration or findings (i.e., a separate statute of limitations analysis) on his bauxite-related or MDP injury. <u>Accord</u>, <u>Cole v. Exxon Mobil Corp</u>., No. 14-22-00756-CV, 2024 Tex. App. LEXIS 7737, at *56 (Tex. App. Oct. 31, 2024) (recognizing a distinction between MDP and asbestosis by stating that "As of 1992, mixed dust pneumoconiosis is a recognized occupational disease just as silicosis, asbestosis, and berylliosis are recognized occupational diseases."). Accordingly, Plaintiffs here are similarly entitled to a separate statute of limitations analysis for their claimed MDP injury.[6]

---

[6] The Court notes that a separate analysis is appropriate not only because asbestosis and MDP

Defendants' arguments are all premised on Dr. Breyer's April 2008 report. Their arguments are irrelevant since they focus on the wrong injury. Indeed, Dr. Breyer's April 2008 report states that Plaintiffs have pneumoconiosis. However, he specifically identifies the type of pneumoconiosis as <u>asbestosis</u> (i.e., bilateral interstitial fibrosis consistent with asbestosis) a critical factor ignored by Defendant. Defs.' Mot. for Summ. J Exs. 44-46, 48. Plaintiffs do not claim to suffer from asbestosis. They claim only MDP. Dr. Breyer's reports do not mention MDP, its cause, or any toxic substance (e.g., bauxite, silica, asbestos). Nothing therein could have alerted Plaintiffs that they had, or may have, a <u>disease</u> called MDP much less its <u>cause</u>. Reason dictates that a report specifying the type of pneumoconiosis a person has, i.e., asbestosis, is not a suspicious circumstance that would trigger a suspicion (or warrant an inquiry) concerning whether the person also has some other form of pneumoconiosis. To the contrary, such a report, from a medical professional, suggests the absence of other forms of the disease. Plaintiffs had no reason to disbelieve Dr. Breyer's impression. As such, his report was insufficient to trigger commencement of the Statute of Limitations for their MDP injury.[7] <u>Accord</u>, <u>Burt</u>, 2024 V.I. at *P43 (concluding that Dr. John's

---

are separate injuries, but because they have separate causes (i.e., asbestos exposure for asbestosis and bauxite plus other dusts for MDP).

[7] Dr. Breyer's report was sufficient to start the Statute of Limitations clock for an asbestos injury. However, as mentioned above, Plaintiffs do not claim that injury. This fact makes his report irrelevant.

X-ray report, which specified the plaintiff had asbestosis, "did not provide Burt with notice of injuries [i.e. MDP] from bauxite and alumina dust exposure.")

Defendants alternatively argue that tolling at the latest ended on May 30, 2008 when Plaintiffs' lawyer told them Dr. Breyer believed they had a pleural disease and additional testing will be required to clarify his findings. Defs.' Suppl. Br. in Support of Mot. for Summ. J. 1-8. They claim Dr. Breyer's information coupled with counsel's knowledge relating to the potential cause of Plaintiffs' injuries were sufficient to put them on notice of their injury and its cause. Id. Counsel's knowledge, they contend, included the fact that he had filed lawsuits on behalf of other plaintiffs, against Defendants, in 2007 and 2008 and alleged their exposure to bauxite and other dusts caused them to develop pneumoconiosis. Id. Counsel's knowledge, they contend, is imputed to Plaintiffs. The Court finds these arguments unpersuasive.

Counsel's knowledge or belief that Plaintiffs had a pleural disease is of no consequence. A pleural disease is a disorder affecting lung tissue. https://www.nhlbi.nih.gov/health/pleural-disorders (Last visited 6/22/2026). Nothing in Dr. Breyer's report mentions pleural disease; and nothing presented to this Court suggests that asbestosis is a pleural disease. The standard is what a reasonable person in Plaintiffs' position would think, not what a reasonable doctor or a reasonable toxic tort lawyer would think. Plaintiffs' counsel is not a doctor and conducted no medical tests upon them. His medical opinion, after reviewing

Dr. Breyer's reports, is of no consequence. Further, the extent of counsel's knowledge imputed to Plaintiffs is limited to knowledge he received during the scope of his representation of them. Burt, 2024 V.I. at *P26. Information he may have concerning diseases suffered by other plaintiffs he represented in earlier unrelated cases is not imputed to Plaintiffs as it was not obtained during the scope of Plaintiffs' representation. Defendants arguments are thus inapposite.

## CONCLUSION

¶25 Viewing the evidence (i.e., the pleadings, statements of undisputed facts, and other evidence submitted in support of, and opposition to Defendants Joint Motion for Summary Judgment) in Plaintiffs' favor, this Court concludes that there is no genuine issue of material fact regarding when Plaintiffs knew they had an injury (i.e., MDP) and its cause. Such knowledge was obtained no earlier than June 2009. This Court further finds that asbestosis and MDP are separate injuries requiring separate statute of limitation analyses. As a matter of law, Plaintiffs' MDP claims, filed in May 2011, less than two years after their cause of action arose, were timely. The Court will thus deny Defendants' Joint Motion for Summary Judgment based on the Statute of Limitations. An order consistent herewith will be entered contemporaneously.

DATE: June 22, 2026

_____
ALPHONSO G. ANDREWS, JR.
Superior Court Judge

**Attest:**
**TAMARA CHARLES**
CLERK OF THE COURT

_Paula Clayton_
COURT CLERK III
_June 22, 2026_
DATE